**Vernell Nashaun JACKSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 1121–95 to 1123–95.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 23, 1996.

Petition for discretionary review from Court of Appeals, 2nd Supreme Judicial District.

David K. Chapman, Fort Worth, for appellant.

Anne E. Swenson, Asst. District Attorney, Fort Worth, Matthew Paul, State's Atty., Austin, for the State.

## DISSENTING OPINION TO REFUSAL OF APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

BAIRD, Judge, dissenting.

Believing appellant's petition for discretionary review should be granted to determine whether questioning veniremembers about their religious preference is proper, I respectfully dissent.

### I.

#### A. The Trial Court

In three indictments, appellant was charged with five counts of aggravated sexual assault. Prior to voir dire, appellant objected to a question on the venire questionnaire which asked: "What is your religious preference?" Appellant objected on the grounds that the question violated the veniremembers' constitutional right to freedom of religion. Appellant requested that the venire be quashed, and that a new venire be assembled and that a revised questionnaire be used or, in the alternative, that no questionnaire be used.[1] Appellant's objection was overruled, trial proceeded, appellant was convicted and sentenced to sixty years confinement. Tex. Penal Code Ann. §§ 22.011 and 22.021.

#### B. The Court of Appeals

On direct appeal, appellant contended questioning veniremembers about their religious preference was unconstitutional. The Court of Appeals held appellant did not present a sufficient record to support his freedom of religion claim on appeal because "there [was] no showing that a peremptory challenge was used to strike a prospective juror on the basis of race, gender, or religion." *Jackson v. State*, (Tex.App.—Fort Worth Cause Nos. 2–93–478–CR, 2–93–479–CR, 2–93–480–CR, delivered June 15, 1995) (Not published), slip op. pg. 3.

The Court next considered whether appellant had standing to assert the freedom of religion rights on behalf of the veniremembers. The Court applied the test of standing from *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), which was first developed in *Singleton v. Wulff*, 428 U.S. 106, 112–16, 96 S.Ct. 2868, 2873–75, 49 L.Ed.2d 826 (1976), and held:

> This case is fundamentally distinguishable from *Powers*. None of the factors that allowed the defendant in *Powers* to assert the constitutional rights of a stricken venireperson are present because there was no discriminatory exclusion of a venireperson in this case. [Appellant] has suffered no cognizable injury from the discriminatory exclusion of a venireperson, he has no common interest with an excluded venireperson to protect the integrity of the judicial process, and no venireperson had reason to commence litigation in order to vindicate his or her freedom of religion rights.

*Jackson*, slip op. pp. 4–5. The Court of Appeals concluded the trial court did not

---

1. The objection and ruling in the trial court were as follows:

   [DEFENSE COUNSEL:] Your Honor, I would object to question number eight on the jury questionnaire which is, "What is you religious preference," on the basis that the State is using this questionnaire as a basis to make their strikes, both for cause and peremptory, and that it could be on the questionnaire for no other reason than to aid in that decision; *that it violates the Constitution for freedom of religion.* We would ask that the panel be quashed and a new panel put together and fill out a different questionnaire.

   THE COURT: What relief do you want?
   [DEFENSE COUNSEL:] To quash the panel.
   THE COURT: No. Overruled.
   [DEFENSE COUNSEL:] And to bring a different panel up with a different questionnaire with that question left out or no questionnaire at all.
   THE COURT: No, I think not. [Emphasis supplied.]
   *Jackson v. State*, (Tex.App.—Fort Worth Cause Nos. 2–93–478–CR, 2–93–479–CR, 2–93–480–CR, delivered June 15, 1995) (Not Published), slip op. pg. 2, n. 1.

abuse its discretion in refusing to quash the venire.[2]

## II. Analysis

### A. Standing

As a general rule, a litigant can only assert his own legal rights. However, under *Singleton*, a litigant may assert the rights of a third party if three criteria are met: first, the litigant must allege "injury in fact," which is, a "sufficiently concrete interest" in the resolution of the disputed issue; second, a close relationship must exist between the litigant and the third party; and, finally, there must exist a "genuine obstacle" or hindrance to the third party's assertion of his own right. *Id.*, 428 U.S. at 112–16, 96 S.Ct. at 2873–75.

The Court of Appeals applied the correct test for determining standing. However, the Court applied the test in the context of whether a veniremember had been excluded on the basis of religion. This was *not* appellant's points of error. Rather, appellant contended the veniremembers' right to freedom of religion was violated by the mere asking of the question. Therefore, the standing issue must be analyzed in that context.

First, appellant must allege "injury in fact," that is, a "sufficiently concrete interest" in the disputed issue. *Singleton*, 428 U.S. at 112, 96 S.Ct. at 2873. The issue is whether it is proper to ask veniremembers their religious preference. I believe appellant has a sufficiently concrete interest in the resolution of this issue because he, like the veniremembers, has a concrete interest in the integrity of the judicial process. "The purpose of the jury system is to impress upon the criminal defendant and the community as a whole that a verdict of conviction or acquittal is given in accordance with the law by persons who are fair." *Powers*, 499 U.S. at 413, 111 S.Ct. at 1372. Veniremembers serve as part of our judicial system and if their Constitutional right to freedom of religion is violated within that system the violation undermines the integrity of the entire judicial process. In sum, the verdict cannot be respected when the veniremembers' own Constitutional rights are violated. Consequently, the criminal defendant ~~thus~~ suffers an injury in fact.

Second, there must be a close relationship between appellant and the veniremembers. *Singleton*, 428 U.S. at 113–15, 96 S.Ct. at 2874. The *Singleton* Court stated: "the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter." *Id.*, at 115, 96 S.Ct. at 2874. From the moment voir dire begins, a close relationship exists between the litigants and the veniremembers. In this relationship, the litigants are effective proponents of the veniremembers' rights. In the instant case, therefore, appellant was an effective proponent of the rights of the veniremembers.

Third, there must exist a genuine obstacle or "hindrance to the third party's ability to protect his or her own interests." *Powers*, 499 U.S. at 411, 111 S.Ct. at 1370–71. The *Powers* Court noted the "practical barriers to [third party litigation] ... because of the small financial stake involved and the economic burdens of litigation." *Id.*, 499 U.S. at 415, 111 S.Ct. at 1373. Generally, veniremembers do not have the time or resources to contest violations of their Constitutional rights in this context. Therefore, expecting veniremembers to vindicate their rights through legal proceedings is unrealistic.[3]

Thus, having satisfied the three prong test for standing under *Powers* and *Singleton*,

---

**2.** Appellant's petition for discretionary review, raises the following questions for review:

　1. Are important freedom of religion issues at stake when prospective jurors are asked their religious preference even though no juror is struck on religious grounds?
　2. Does appellant have standing to assert the freedom of religion rights of the prospective jurors in his trial?

　3. Does freedom of religion include the right to religious privacy?

**3.** The State argues the veniremembers could have refused to answer the question thereby vindicating their own rights. I would summarily reject this argument. Refusing to answer the question is not a viable alternative because it could subject the veniremembers to contempt and result in fines or even confinement.

the Court of Appeals erred in holding appellant had no standing to challenge the question. The remaining issue is whether it is proper to question veniremembers about their religious preference.

## B. Religious Preference

The right to question veniremembers is not unlimited, but must, of necessity, be limited to inquiries that are material and relevant to the specific case being tried. *Johnson v. Reed*, 464 S.W.2d 689 (Tex.Civ.App.–Dallas 1971), cert. denied 405 U.S. 981, 92 S.Ct. 1197, 31 L.Ed.2d 256. In *Rose v. Sheedy*, 345 Mo. 610, 134 S.W.2d 18, 19 (1939), the Missouri Supreme Court held that inquiry into a veniremember's religious beliefs is proper only where religious issues are expressly presented in the case, where a religious organization is a party to the litigation or where the inquiry is a necessary predicate to the exercise of peremptory challenges. *See also, Coleman v. United States*, 379 A.2d 951, 954 (D.C.Ct.App.1977) ("Inquiry as to a juror's religious beliefs is proper on voir dire where religious issues are presented expressly in the case, or where a religious organization is a party to the litigation ...") Indeed in *Yarborough v. United States*, 230 F.2d 56, 63 (4th Cir.1956), the Fourth Circuit held the trial judge did *not* err in refusing to permit questions regarding religious backgrounds when there was no matter of religious consequence involved in the trial. Similarly, in *Brandborg v. Lucas*, 891 F.Supp. 352 (E.D.Tex.1995), the Court held religion was not a proper ground for inquiry where it did not relate to issues at trial.

In *Whalen v. Roe*, 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977), the Supreme Court held Constitutional privacy rights include an "individual interest in avoiding disclosure of personal matters." The Supreme Court has also stated the right to privacy was best described in terms used by Justice Brandeis as the "right to be let alone" and is the right considered "the right most valued by civilized men." *Olmstead v. United States*, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928). In this context, in *Justus v. Virginia*, 222 Va. 667, 283 S.E.2d 905, 910 (1981), the trial judge would not permit voir dire into the veniremembers' religious preference. The Virginia Supreme Court affirmed, holding such an inquiry would invade a potential juror's privacy and should therefore not be allowed.[4] In *Arizona v. Via*, 146 Ariz. 108, 704 P.2d 238, 248 (1985), the Arizona Supreme Court agreed with *Justus* "that questions concerning a potential juror's religious beliefs should be restricted to questions of relevance to the issues in the case." The Court further held that "even relevant questions about religion cannot be considered in a vacuum isolated from their impact upon the privacy interests of venire members. For a question concerning religious beliefs to be allowed, it must relate to issues or facts that may arise at trial." (citing *Coleman v. United States*, 379 A.2d 951, 954 (D.C.Ct.App.1977)).

In *United States v. Barnes*, 604 F.2d 121 (2d Cir.1979), the Second Circuit stated:

> As to religion, our jury selections system was not designed to subject prospective jurors to a catechism of their tenets of faith, whether it be Catholic, Jewish, Protestant, or Mohammedan, or to force them to publicly declare themselves to be atheists. Indeed, many a juror might have a real doubt as to the particular religious category into which they could properly place themselves.

*Id.*, 604 F.2d at 141.

The general rule then should be that inquiry into religious preference is limited to trials where religious issues are expressly presented in the case, where a religious organization is a party to the litigation or where the inquiry is a necessary predicate to the exercise of peremptory challenges. And, in those instances, there must be a balancing between the defendant's right to a fair and impartial jury and the veniremember's privacy rights.

---

4. In *Justus* the proper inquiry was limited to the trial judge asking the veniremembers whether they held religious scruples concerning the death penalty. *Justus*, 283 S.E.2d at 910.

## C. Balancing Test

The days of unfettered voir dire examination have long since passed and an increasing amount of deference is now being given to the rights of the veniremembers. As the *Barnes* court aptly noted:

If Darrowesque questioning of prospective jurors were allowed, namely "religion, politics, social standing, family ties, friends, habits of life and thought", any semblance of juror privacy would have to be sacrificed.

*Id.*, at 143. Indeed,

It is not, after all, the prospective jurors who are on trial in the cases that come before the courts. It can be imagined that, as counsel seek more and more information to aid in filling the jury box with persons of a particular type whom they believe to be well disposed toward their clients, prospective jurors will be less than willing to serve if they know that inquiry into their essentially private concerns will be pressed.

*Id.*, at 140.

The *Brandborg* Court explained that during voir dire, the attorneys for the parties attempt to achieve as favorable a jury as possible, i.e. one sympathetic to their client's point of view, through the use of probing inquiries. The judge is called upon to determine the scope of this inquiry and consequently, protect the privacy rights of the veniremembers. The *Brandborg* Court stated: "[a] person may lose his expectation of privacy with respect to certain matters by taking an action that opens those matters to public scrutiny.... However, nothing about becoming a prospective juror amounts to a willing waiver of an expectation of privacy." *Brandborg*, 891 F.Supp. at 357 (internal citation omitted). Prospective jurors are summoned to court and if they do not comply with their summons they could be subject to criminal or civil sanctions. Many do not wish to participate at all.

I would adopt the test the *Brandborg* Court recommended. That is, before any questionnaires are submitted to potential jurors, "... the court should screen the questions [on the questionnaires] to determine what questions should be excluded based upon lack of relevance to the matter at hand. The parties would then be notified of the excluded questions and allowed to demonstrate relevance." *Brandborg*, 891 F.Supp. at 360 (footnote omitted). Similarly, the court in *United States v. Robinson*, 475 F.2d 376, 381 (D.C.Cir.1973) stated: "[w]hen the matter sought to be explored on *voir dire* does not relate [to the issues before the Court] ... it is incumbent upon the proponent to lay a foundation for his question by showing that it is reasonably calculated to discover an actual and likely source of prejudice...."

This test will balance the rights of the venire with those of the litigants. If citizens can rely on the trial judge to protect them from unwarranted and unwanted intrusions into their personal lives by limiting inquiry to matters at issue in the trial then citizens will not fear jury service. Therefore, the test will serve to encourage the active participation of our citizens in the criminal justice system. At the same time, the test provides the litigants with the ability to *voir dire* into all areas that are relevant to the case being tried.

Moreover, in order to ensure an effective and thorough voir dire, the trial judge's decision to limit voir dire is subject to appellate review. *See, McCarter v. State*, 837 S.W.2d 117 (Tex.Cr.App.1992). That standard of review was stated in *United States v. Greer*, 968 F.2d 433, 435 (5th Cir.1992): "[t]he test for determining whether a court has adequately questioned prospective jurors regarding bias is whether 'the means employed to test impartiality have created a reasonable assurance that prejudice would be discovered if present.'" (quoting *United States v. Saimiento–Rozo*, 676 F.2d 146, 148 (5th Cir.

1982)).[5]

### III.

### Conclusion

In the instant case, appellant was charged with aggravated sexual assault. Neither party was a religious organization and religious issues were not expressly presented in the case. Furthermore, the record does not reveal that inquiry into the veniremembers' religious preference was a necessary predicate to the exercise of peremptory challenges. For these reasons, I would hold the Court of Appeals erred in affirming the judgment of the trial court.

With these comments, I respectfully dissent to the refusal of appellant's petition for discretionary review.

---

5. The court found no abuse of discretion in the trial judge not requiring Jewish veniremembers to identify themselves.