UNITED STATES of America

v.

Frank SERAFINI.

No. 3:CR–97–0225.

United States District Court,
M.D. Pennsylvania.

June 23, 1999.

Bruce Brandler, Asst. U.S. Atty., Harrisburg, PA, for plaintiff.

Sal Cognetti, Dan Breyer, Scranton, PA, for defendant.

### *MEMORANDUM*

VANASKIE, District Judge.

Presently pending before the Court is a "Jury Questionnaire" proposed on behalf of defendant Frank Serafini, a state legislator who stands accused of committing perjury in connection with an investigation into alleged illegal contributions to candidates for political office. The proposed questionnaire, a copy of which is attached hereto, contains 140 separately numbered questions. The government has submitted objections to a number of the questions.

■ Consistent with the obligation of the trial judge to superintend the jury selection process, see *Mu'Min v. Virginia,* 500 U.S. 415, 423, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991), I have carefully reviewed the 140 separate questions for purposes of determining whether the inquiries are appropriate, considering the purposes of the questioning process and the privacy interests of prospective jurors. I have concluded that a number of questions will not be included in the questionnaire that will be sent to prospective jurors in advance of jury selection.[1] Set forth herein are my reasons for not allowing certain questions to be asked of prospective jurors.

### DISCUSSION

■ The questioning of jurors that occurs in the voir dire process "serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." *Mu'Min,* 500 U.S. at 431, 111 S.Ct. 1899. It is the responsibility of the trial court to ascertain whether a prospective juror is biased. *See Dennis v. United States,* 339 U.S. 162, 168, 70 S.Ct. 519, 94 L.Ed. 734 (1950). Wide latitude has been accorded federal judges in determining what questions may be asked in an attempt to reveal bias. *United States v. Padilla–Valenzuela,* 896 F.Supp. 968, 970 (D.Ariz.1995). As stated in *Rosales–Lopez v. United States,* 451 U.S. 182, 189, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981):

> Because the obligation to empanel an impartial jury lies in the first instance with the trial judge, and because he must rely largely on his immediate perceptions, federal judges have been accorded ample discretion in determining how best to conduct the voir dire.

■ Whether to allow written questionnaires to be submitted to prospective jurors in advance of the jury selection date, and the content of any such questionnaire, falls within the wide discretion accorded to the trial court in conducting voir dire. Juror questionnaires may serve as a better vehicle to unearth bias than oral questioning in court and may also expedite the jury

---

1. The government's objections have been helpful in screening the questionnaire, but I have not limited my review to only those questions to which objections have been interposed. As recognized in *United States v. McDade,* 929 F.Supp. 815 (E.D.Pa.1996), the trial court has an independent obligation to scrutinize juror questionnaires to assure that the inquiries are reasonably calculated to yield meaningful information without intruding too deeply into personal concerns.

selection process. In addition to searching for evidence of actual bias, the trial lawyer may seek to use the questionnaire to obtain information to aid jury consultants to compile profiles on prospective jurors for purposes of identifying those prospective jurors more likely to favor the side of the party retaining the consultant. The questionnaire may thus contain a number of inquiries into intensely personal matters that have nothing to do with discovering actual bias. In addition, the questionnaire may also be intended to condition the jury to a party's particular viewpoint.

■ The Sixth Amendment guarantees a "right to ... trial by an impartial jury ...", but does not accord the right to either the prosecution or the defense "to have voir dire conducted in such a way as to mold the jury in a way that the jury will be receptive to counsel's case." *Padilla–Valenzuela*, 896 F.Supp. at 972. As stated in *Schlinsky v. United States*, 379 F.2d 735, 738 (1st Cir.), *cert. denied*, 389 U.S. 920, 88 S.Ct. 236, 19 L.Ed.2d 265 (1967):

> [T]he purpose of the voir dire is to ascertain disqualifications, not to afford individual analysis in depth to permit a party to choose a jury that fits into some mold that [counsel] believes appropriate for [counsel's] case.

■■ It is the trial court's responsibility to ensure that the voir dire is not an overly intrusive inquiry into the private affairs of prospective jurors for the purposes of obtaining personality profiles or molding "the jury in a way that the jury will be receptive to counsel's case." *Padilla–Valenzuela*, 896 F.Supp. at 972. In performing this responsibility, the trial court must balance the right of the parties to engage in a meaningful inquiry against the prospective juror's right of privacy. As explained by Judge Gawthrop in *United States v. McDade*, 929 F.Supp. 815, 817–818 (E.D.Pa.1996):

> [The prospective jurors'] privacy rights—'to be let alone'—are not, of course, absolute. Their jury service does expose them to some searching inquiry as to such matters as their ability to be fair, their absence of preconceived, fixed opinions. But there must be some balance, some drawing the line, and when hard-charging counsel are in hot pursuit of every little empirical nugget they get their eyes on, it is the trial judge who must, *sua sponte*, reign them in and give the jurors some protection.

■ In other words, an intrusion into the prospective jurors' personal and private thoughts is warranted when a question has great probative value with respect to the issues in the case or the ability of the prospective juror to be fair, unburdened by strongly-held opinions. But as the connection between the voir dire question and matters of actual bias or fair-mindedness becomes attenuated, the intrusion into the prospective juror's personal and private thoughts cannot be sanctioned. And when the inquiry has no obvious relevance to actual bias or fair-mindedness, the inquiry should be disallowed.

The comprehensive questionnaire submitted on behalf of defendant Frank Serafini in this case runs the gamut from the highly relevant and probative to the marginally pertinent and minimally probative questions. Falling in this latter category are a host of questions that will be disallowed.

■ Specifically, question number 1, which asks where the prospective juror was born and where the prospective jurors' parents were born has no connection between actual bias or the ability to be fair. So too is the inquiry into race and ethnic background set forth in question number 2. Race, of course, can be a legitimate area of inquiry in a case where race may be a factor. *See Aldridge v. United States*, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931). But race need not be an inquiry in every case, especially where, as here, it is not a factor. *See Rosales–Lopez v. United States*, 451 U.S. 182, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981). Question 2, therefore, will not be allowed.

■ Nor will I allow question 4, which concerns the current marital status of the prospective juror. Marital status is not an issue in this case, and has no obvious connection to the ability to be fair and open.

■ While inquiries into health conditions are pertinent to determine the ability of a juror to listen attentively as testimony is presented, question 6, which requires the juror to state the nature of any health problem, and question 9, which inquires concerning medication being taken by a prospective juror, are too intrusive. In other words, they are not limited to ascertaining conditions or medications that would affect the ability of a prospective juror to sit. *See McDade,* 929 F.Supp. at 817. Less intrusive inquiries that seek to determine whether a juror has some condition or takes some medication that would impair the ability of the juror to sit for long periods of time and focus on oral presentations can be made during the in-court voir dire session. Accordingly, questions six and nine will be disallowed.

■ Whether a juror is registered to vote, his or her political party affiliation, and political philosophy, as asked in questions 10, 84, 89, 98, 99 and 101, have no pertinence to a juror's qualification to be fair and impartial in this case. The ability to be fair has no direct linkage to political party affiliation or active participation in the political process. Thus, these questions will be disallowed. *See United States v. Goland,* 959 F.2d 1449, 1454 (9th Cir. 1992), *cert. denied,* 507 U.S. 960, 113 S.Ct. 1384, 122 L.Ed.2d 759 (1993).

■ So too will question 15, which asks whether the prospective juror has ever bought or owned stock. Neither stock ownership nor wealth has any discernable link with fairness and open-mindedness. It has been recognized that a court need not allow questioning "about speculated bias against the wealthy." *United States v. Hirschberg,* 988 F.2d 1509, 1514 (7th Cir.), *cert. denied,* 510 U.S. 918, 114 S.Ct. 311, 126 L.Ed.2d 258 (1993). Thus, in addition to question 15, I will also strike questions 118 through 120, which concern perceptions about wealth.

■ Whether a juror, a member of its family or a close friend [2] had any experience with or special training in the areas of accounting, banking, law, law enforcement and environmental sciences will be disallowed. Accounting and banking have no direct pertinence here. There are other questions that deal with experience in the law (*e.g.,* 18), law enforcement (*e.g.,* 48) or environmental matters (*e.g.,* 86).

■ Question 22 asks the prospective juror to indicate whether the prospective juror's annual income (or, if married, joint income) falls within certain enumerated categories. As did Judge Gawthrop in the *McDade* case, I find this inquiry "offensively intrusive." *McDade,* 929 F.Supp. at 818. Once again, a prospective juror's income level has no discernable link with the issues in this case or the ability to be fair.

■ Questions 29 through 31, which inquire concerning a person's religious convictions, have no place in this case. "[W]hen religion is unrelated to the issue at trial it is not a proper subject for inquiry." *Brandborg v. Lucas,* 891 F.Supp. 352, 358 (E.D.Tex.1995). Accordingly, these questions will be disallowed.[3]

---

2. As a general rule, "close friends" will be deleted from each question. The phrase is too ambiguous to require jurors to answer under penalty of perjury whether some acquaintance has something in his or her background that is the subject matter of an inquiry. Also, the terms "relative," "family," and "immediate family member" will be limited to mean spouse, child or parent.

3. Question 47 will be modified to ask whether the prospective juror has any moral, philosophical or *religious* beliefs that would make it difficult for him or her to sit in judgment of the defendant.

■ Question 32, which inquires whether the prospective juror, a close friend, or any member of the prospective juror's family ever sought employment with any of a number of governmental units and agencies, is far too broad. Accordingly, it will be disallowed. In this regard, there are more general inquiries, such as question 33, which asks whether you or any member of your immediate family ever sought employment with the United States government or the Commonwealth of Pennsylvania, which adequately cover the subject matter.

■ Whether the prospective juror, a family member, or a close friend ever held a United States government security clearance is not pertinent to this case. Accordingly, question 34 will not be permitted.

■ Questions 56 and 57, which inquire concerning prospective jurors' favorite television shows and whether they watch certain specifically mentioned programs, such as *60 Minutes,* have no evident link with fairness and are overly intrusive. Questions 65 and 66 (asking the jurors to list the newspapers and magazines they read), 67 (asking the jurors how often they watch news on television), 90 (inquiring about a juror's leisure time interests and activities), 91 through 93 (asking jurors to identify any book they are currently reading, the last three books they have read, and their three favorite magazines), 94 (asking the juror to indicate whether he or she is a loner, leader, follower or "other"), and 95 (asking whether the juror has any bumper stickers on his or her vehicle) are also far too intrusive given the marginal pertinence they may have in ferreting out actual bias or the ability to be fair and open minded. In this regard, I fully endorse the following statement of Judge Gawthrop in the *McDade* case:

> I happen to believe that the United States Department of Justice, and defense counsel, have no business knowing what book a juror is currently reading, presumably within the quiet confines of his or her own home—or wherever, for

that matter. Neither may they properly inventory the jurors' bookshelves and magazine racks, nor scrutinize their library cards. Whatever marginal insights trial lawyers and their jury consultants may gain from this information is markedly outweighed by concerns Orwellian. When one comes into court to serve as a juror, one gives up plenty: time, freedom, and the usual right to read, hear and see the news—to name but a few of the sacrifices. But to be subjected to such inquiries as those here would be to give up more than is necessary for the proper and fair administration of justice. The lawyers may certainly ask whether jurors have read or heard about the defendant or any lawyer or witness involved in the case, or anything about the case. Should the answer be 'yes', they shall be permitted full follow up questioning with individual voir dire. But whether they watch *Sixty Minutes* or *Dateline* or *Nightline* or *Bay Watch* for that matter, as fascinating as some might find these snippets of information to be, sheds no real light on whether they have formed a fixed opinion as to what the verdict in this yet-untried case would be, or whether they would approach it with even a hint of bias.

929 F.Supp. at 819.

■ Also beyond the pale are questions that seek to determine whether a prospective juror belongs to some civic, social, religious, charitable, volunteer, professional or business organization and, if so, whether the juror has held some elected position in that group or organization (Nos. 82 and 85); is part of group that lobbies or takes positions on public issues (No. 96); or is "politically active" (No. 100). To reiterate, these questions are not reasonably calculated to discern actual bias or ability to be fair minded. Accordingly, they are not appropriate inquiries.

■ In addition to having the authority to "limit voir dire when the parties seek

information too remote from the issues in the case ...," *Brandborg*, 891 F.Supp. at 361, the trial court has the authority to screen the interrogatories for purposes of determining whether they are unfairly phrased, seek improperly to condition the jury to a party's perspective, or are redundant. The questionnaire in this case includes questions falling within each of these categories.

 For example, question 35, which asks whether the prospective juror believes that the testimony of a law enforcement officer is more or less likely to be truthful than the testimony of some other witness, is patently unfair. It does not admit of an answer that the testimony is neither to be more likely nor less likely truthful than some other witness. Accordingly, it will be stricken. Also falling in the realm of unfair questions are No. 63 (asking whether the juror would believe what he or she heard in court or would wonder why it was different from what she or he had read or heard outside of court); No. 70 (asking whether an opinion has been formed as to the way this case has been handled by the United States government, implying that there has been something improper in the processing of this case); Nos. 108 and 117 (suggesting that a person in the public spotlight or a politician does not receive the same treatment as a member of the public at large); and No. 134 (asking for a yes or no answer to the compound question of whether the prospective juror has any impression, opinion or belief "that would lead you to believe the defendant is guilty or innocent?").

Question 122 sought to determine whether any prospective juror would be acquainted with potential government witnesses. The government has objected to disclosing its witnesses in advance of trial. Because the government is unwilling to disclose its witnesses in advance of jury selection, the question of whether the prospective jurors are acquainted with any of the prospective witnesses will be asked during oral voir dire.

A number of questions call for open ended answers on matters covered by other, more precise questions that call for yes or no answers. The open ended questions (Nos. 58 through 61, 77, 78, 88, 105 through 108, 110, 111 through 113, 128, 133 and 140) will be disallowed.

Finally, there are a number of questions that concern a juror's understanding of the criminal justice system. To eliminate redundancies, questions 72 through 77, 80, 81, 82 and 133 will be stricken.[4]

## CONCLUSION

Juror questionnaires, when properly phrased and limited, can significantly facilitate the jury selection process. In many respects, the questionnaire proposed on behalf of defendant Frank Serafini serves these laudable goals. There are, however, a number of impermissible and improper questions. For the reasons stated above,

---

4. The government, relying upon *United States v. Wooton*, 518 F.2d 943 (3d Cir.), *cert. denied*, 423 U.S. 895, 96 S.Ct. 196, 46 L.Ed.2d 128 (1975), generally objects to any inquiries that concern such substantive matters as the presumption of innocence, burden of proof, etc. *Wooton* held that it was not an abuse of discretion to refuse to inquire into such matters during voir dire. But *Wooton* did not hold that such inquiries are foreclosed. In the exercise of my discretion, I believe the jurors should answer general inquiries with respect to the matters covered in questions 135 (juror must follow the law whether he or she disagrees with it), 136 (no adverse inference when defendant does not testify), 137

(burden of proof beyond a reasonable doubt), 138 (indictment does not give rise to any inference of wrongdoing), and 139 (presumption of innocence).

The government has requested that, if questioning on "substantive areas" were allowed, it be accorded the opportunity to submit questions covering such topics as circumstantial evidence versus direct evidence, proof beyond a reasonable doubt versus proof to a mathematical certainty, and other topics usually covered in legal instructions. Given the existing time constraints, the government will be given the opportunity to submit proposed voir dire questions to the Court for inclusion in the oral voir dire portion of jury selection.

the impermissible and improper questions will be stricken, and a revised questionnaire will be sent to the jury pool suitably in advance of the jury selection date to obtain answers and provide counsel with the jurors' answers.[5]

## JURY QUESTIONNAIRE

If you need more space to complete your answer, continue your answer on one of the blank numbered pages provided at the end of this questionnaire. Be sure to indicate on the blank page the number of the question you are answering.

Juror Number: ____ Date: _____

Full Name: _____

Sex: Male ____ Female ____ Age: _____

1. Where were you born? _____

 a. If you were born some place other than the United States, have you become a United States citizen and, if so, when? _____

 b. Were your parents born in the United States? If not, in what country were they born and when did they emigrate to the United States? ____

2. What is your race or ethnic background?
 Black ____
 White ____
 Hispanic ____
 Asian ____
 Other (please specify) ____

3. Is English your native language?
 Yes ____ No ____

 a. If no, what is your native language?
 _____

 b. Do you understand the English language? Yes____ No____

 c. Do you speak the English language? Yes____ No____

 d. Do you read the English language? Yes____ No____

 e. Do you speak, read, write and/or understand any language other than English? Yes ____ No ____

 f. If yes, please indicate what other language(s): _____

4. What is your current marital status? (Circle one)

 a. Married

 b. Separated

 c. Divorced

 d. Widowed

 e. Never Married

5. If you have children and/or step-children, please state the following:

 a. The sex and age of each child: ____

 b. If your children and/or step-children are employed, the nature of his or her employment: _____

6. What is the general condition of your health? _____

 a. If you have any kind of health problem, please state briefly the nature of the problem. _____

7. What is the general condition of your eyesight? _____

 a. Do you wear contact lenses or glasses? _____

8. What is the general condition of your hearing? _____

 a. Do you wear a hearing aid?
 Yes ____ No ____

9. Do you require regular or frequent medication or medical care and attention?
 Yes ____ No ____

 a. If you require regular or frequent medication, please describe the nature of the medication, its effect upon you, and the frequency of taking such medication. _____

10. Are you registered to vote?

5. The instructions to the questionnaire will advise the jurors that they have the right to decline to answer a question they consider to be unduly intrusive or that calls for personally embarrassing information. The jurors will be further advised that the court and counsel will meet with the jurors individually with respect to questions that they have refused to answer so that their answers can be obtained privately.

Yes ___ No ___

a. If so, with what political party? ___

11. How long have you lived in Pennsylvania? _____

12. In what county do you currently reside? _____

a. Length of time at current residence: _____

b. How long have you been a resident of that county? _____

c. Where was your previous residence? _____

13. What city, borough or township do you reside in? _____

14. Do you:
Own a home? _____
Rent? _____
Live with relatives or friends? _____

15. Have you ever bought or owned stock?

Yes ___ No ___

16. What is the highest grade level that *you* completed in school, including any trade or technical school? (Circle one)

7 8 9 10 11 12 College–1 College–2
College–3 College–4 Post graduate Other ___years

a. If you attended school after high school, including any trade or vocational schools, please describe the type of school and your major course of study: _____

b. If you attended college, please list your field(s) of study and any degree(s) you received: _____

c. If you attended post graduate school, please list your field(s) of study and any degree(s) you received: _____

17. If married, what was the highest grade level completed by your *spouse?* (Circle one)

7 8 9 10 11 12 College–1 College–2
College–3 College–4 Post graduate Other ___years

a. If he/she attended school after high school, including any trade or vocational schools, please describe the type of school and the major course of study (if you know): _____

b. If he/she attended college, please list his/her field(s) of study and any degree(s) he/she received (if. you know): _____

c. If he/she attended post graduate school, please list his/her field(s) of study and any degree(s) he/she received (if you know): _____

18. Have you or your spouse ever had any legal training, taken any law courses, or been employed by a law firm?

Yes ___ No ___

a. If yes, please explain: _____

19. Have you, a relative or a close friend ever applied to or worked for a federal, state or local governmental entity or agency?

Yes ___ No ___

20. Have you, any member of your family or a close friend had any experience with or special training in any of the following areas: (Please check all that apply)

| | SELF | SOMEONE CLOSE | NO |
|---|---|---|---|
| Accounting/bookkeeping | ___ | ___ | ___ |
| Banking | ___ | ___ | ___ |
| Law | ___ | ___ | ___ |
| Law enforcement | ___ | ___ | ___ |
| Environmental Sciences | ___ | ___ | ___ |

21. What is *your* current employment status? (Circle all that apply)

a. Employed full time (over 30 hours per week)

b. Employed part time (5 to 30 hours per week)

c. Unemployed

d. Retired

e. Student: part-time/full-time

f. Homemaker

g. Disabled

22. What is your current annual income (if married, please indicate joint income):

Less than $10,000 _____
$10,000 to $29,999 _____
$30,000 to $49,999 _____
$50,000 to $69,999 _____
$70,000 to $99,999 _____
Over $100,000 _____

23. State *your* occupation for the last five years, beginning with the most current. If you are retired or unemployed, state the date of your retirement/unemployment and indicate your occupation for the five years preceding your retirement/unemployment.

| EMPLOYER | POSITION | DATES | REASON FOR LEAVING |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

24. If you have supervised employees in the past, or do so today, indicate the number of employees supervised by you. _____

25. If married, what is the employment status of your *spouse?* (Circle all that apply)

a. Employed full time (over 30 hours per week)

b. Employed part time (5 to 30 hours per week)

c. Unemployed

d. Retired

e. Student: part-time/full-time

f. Homemaker

g. Disabled

26. If married, state the occupation of your spouse for the past five years, beginning with the most current employment. If he/she is retired or unemployed, state the date of his/her retirement/unemployment and indicate his/her occupation for the five years preceding his/her retirement/unemployment.

| EMPLOYER | POSITION | DATES | REASON FOR LEAVING |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

27. If you were *previously* married, please state the occupation of your *previous spouse(s)* for the five years preceding the termination of the marriage (whether terminated by divorce or death) if you know.

| EMPLOYER | POSITION | DATES | REASON FOR LEAVING |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

28. If you are single and share living space with another adult or adults, please state the nature of his or her employment and level of education.

_____

29. Do you consider yourself a religious person?

Yes _____ No _____

30. Describe any special post or position you or your spouse hold at your place of worship. _____

31. Would your religious principles affect your ability to sit in judgment of another or be impartial in deciding this case?

Yes _____ No _____

a. If yes, please explain: _____

32. Have you, a close friend, or any member of your family ever sought employment, been employed by, or associated with any of the following? **(Please check all that apply and indicate who sought or obtained such employment, the location of employment, and the job position, if you know.)**

_____ United States Senate

_____ United States House of Representatives

_____ Federal Bureau of Investigation (FBI)

_____ Central Intelligence Agency (CIA)

_____ Drug Enforcement Agency (DEA)

_____ National Security Agency (NSA)

_____ United States Navy

_____ Department of Justice

_____ Department of Treasury

_____ Defense Intelligence Agency (DIA)

_____ U.S. Customs Service

_____ U.S. Secret Service

_____ Internal Revenue Service (IRS)

_____ Bureau of Alcohol, Tobacco & Firearms

_____ U.S. Attorney's Office

_____ Public Defender's Office

_____ U.S. Court of Appeals

_____ Any Probation Department

_____ State Attorney's Office

_____ State, County or City Law Enforcement Agency (Sheriff's Office, Police Department, Highway Patrol, etc.)

_____ Pennsylvania Attorney General's Office

_____ Commonwealth of Pennsylvania

_____ Commonwealth of Pennsylvania Senate

_____ Commonwealth of Pennsylvania House of Representatives

_____ Any foreign consulate or embassy (specify which consulate or embassy) _____

_____ Any court, state or federal (specify which court) _____

_____ Any law firm which represents _criminal_ defendants _____

_____ Any law firm which represents clients in _civil_ litigation _____

_____ Security Guard

_____ Private Investigation Agency

_____ Any television station (specify which station) _____

_____ Any radio station (specify which station) _____

_____ Any newspaper, magazine or journal (specify which one) _____

_____ Any political campaign (specify which one) _____

33. Have you or any member of your immediate family ever sought employment with the United States Government or the Commonwealth of Pennsylvania Government, other than the military and the agencies listed in Question No. 32?

Yes _____ No _____

a. If yes, please state who sought employment, the government agency(s), and whether or not you or they were hired, and if applicable, the approximate date of employment. _____

34. Have you, any member of your family, or a close friend ever held a United States government security clearance in connection with your/his/her employment?

Yes _____ No _____

a. If yes, state which person had the clearance(s) and the employment involved. _____

35. Do you believe that the testimony of a witness who is a law enforcement officer is _more_ or _less_ likely to be truthful than the testimony of a civilian witness or a criminal defendant?

More _____ Less _____

a. Please explain: _____

36. Have you or any immediate family member ever belonged to a neighborhood crime watch program or in any way supported a crime stoppers group?

Yes _____ No _____

a. If yes, what is/was the extent of your/his/her participation? _____

37. Have you, a family member, or a close family friend, been a member of any militia, paramilitary force, or similar organization?

Yes _____ No _____

a. If yes, please explain: _____

38. Have you ever been in court before, other than for a minor traffic violation?

Yes _____ No _____

a. If yes, what were the circumstances?

_____

39. Have you ever been a witness or given a statement in any type of legal proceeding?

Yes _____ No _____

a. If yes, briefly describe the circumstances. _____

40. Have you or anyone in your family ever been a party to a lawsuit, other than a domestic lawsuit?

Yes _____ No _____

a. If yes, what type of lawsuit was it and what was the disposition? ___

41. Have you, a close friend, or family member ever been accused of, charged with or convicted of any crime, or been the subject of a criminal investigation, other than a minor traffic violation?

Yes ___ No ___

a. If yes, state who, the date, crime, charging authority, and the outcome.

_____

b. Do you feel that you, the friend or the family member were justly accused, charged, convicted or investigated?

Yes ___ No ___

c. If no, please explain: _____

42. Have you or any member of your immediate family ever been audited or had a dispute with any agency or department of the United States Government (including the IRS, Social Security Administration, Veterans Administrations, etc.)?

Yes ___ No ___

a. If yes, do you think you or your family member were treated fairly?

Yes ___ No ___

b. If no, please explain: _____

43. Have you, a member of your family, or a close friend ever been the victim of or witnessed any crime?

Yes ___ No ___

a. If yes, please describe the crime(s) and the person involved and which person was involved either as a victim or witness. _____

b. Was anyone arrested?

Yes ___ No ___

c. If there was an arrest, what was the outcome? _____

d. If there was a trial, did you testify?

Yes ___ No ___

e. Were you satisfied with the way law enforcement handled the matter?

Yes ___ No ___

f. If no, please explain: _____

44. Have you or a relative or close friend ever been falsely accused of a crime?

Yes ___ No ___

a. If yes, please explain: _____

45. Do you have any close friends or relatives who are lawyers or who have attended law school?

Yes ___ No ___

46. Are you or do you have any relatives or close friends who are judges, law clerks, court attendants, clerks or part of the court's personnel, probation officers, or persons connected with any penal institution, jail, correctional institution, or penitentiary?

Yes ___ No ___

a. If yes, please explain: _____

47. Do you have any moral or philosophical beliefs that would make it difficult for you to sit in judgment of the defendant?

Yes ___ No ___

a. If yes, please explain: _____

48. Have you, a close friend, a spouse or a relative ever had any training in law enforcement?

Yes ___ No ___

a. If yes, please state *who* received the training and what kind of training it was. _____

49. Have you or any member of your family ever been in the United States military (including the military reserves, National Guard or ROTC)?

Yes ___ No ___

a. If yes, who, what branch, rank and date of service, if you know. \_\_\_\_

b. Were you ever in the military police or shore patrol?

Yes \_\_\_\_ No \_\_\_\_

c. Have you ever had a military disciplinary action taken against you?

Yes \_\_\_\_ No \_\_\_\_

d. If yes, please explain the nature and result of the disciplinary action. _____

e. If yes, did you receive an honorable discharge? _____

50. Have you, a family member, or a friend ever served on an Grand Jury before?

Yes \_\_\_\_ No \_\_\_\_

a. If yes, were you your family member, or friend a member of the Grand Jury that handed down the indictment in this case or investigated any individual(s) mentioned anywhere else in this questionnaire?

Yes \_\_\_\_ No \_\_\_\_

51. Have you ever served on a jury before?

Yes \_\_\_\_ No \_\_\_\_

(For each time you have sat on jury, please indicate the type of case, when you served, whether a verdict was reached, and, if no verdict was reached, the reason. *Please do NOT state the verdict):*

Example: civil-car accident 1984 yes
Example: criminal-robbery 1986 no-deadlocked
Example: civil-malpractice 1992 no-case settled

TYPE OF CASE YEAR VERDICT REACHED (YES OR NO)

_____
_____
_____

52. If you have served on a jury before, is there anything about your past service that would make it difficult for you to sit as a juror in this case?

Yes \_\_\_\_ No \_\_\_\_

a. If yes, please explain: _____

53. Have you ever heard of the defendant in this case, State Representative Frank Serafini?

Yes \_\_\_\_ No \_\_\_\_

54. If you have heard of or read anything about this case, please indicate where you heard of or read about this case: (Check all that apply)

| | |
|---|---|
| T.V. News | \_\_\_\_ |
| Radio News | \_\_\_\_ |
| Newspapers | \_\_\_\_ |
| Magazines | \_\_\_\_ |
| Conversations | \_\_\_\_ |
| Books | \_\_\_\_ |
| Heard other people discussing the case | \_\_\_\_ |

a. If yes, please indicate what you read or heard: _____

55. If you checked T.V. News, Radio News, Newspapers, Magazines or Books, please indicate below in which of these materials you saw or heard about this case and how often you saw references to this case. (Check all that apply)

| | Regularly | Sometimes | Seldom | Never |
|---|---|---|---|---|
| The Scranton Times | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ |
| The Scranton Tribune | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ |
| The Sunday Times | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ |
| The Times Leader | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ |
| The Citizens Voice | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ |
| The Patriot News | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ |
| The Philadelphia Inquirer | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ |
| Other Newspaper | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ |
| If other newspaper, please specify: _____ | | | | |
| Channel 22 News (CBS) | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ |
| Channel 28 News (NBC) | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ |
| Channel 16 News (ABC) | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ |
| Other T.V. News | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ |
| If other T.V. news, please specify: _____ | | | | |
| Talk show radio A.M. | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ | \_\_\_\_ |

Any other news sources not listed: _____

56. What are your three favorite television shows? _____

57. Do you watch any of the following programs? (Check all that apply)

| | |
|---|---|
| 60 Minutes | \_\_\_\_ |
| 20/20 | \_\_\_\_ |
| Nightline | \_\_\_\_ |
| Dateline | \_\_\_\_ |
| Law & Order | \_\_\_\_ |
| Current Affair | \_\_\_\_ |

Other news/business/entertainment shows (specify): _____

58. What are your opinions of the criminal justice system? _____

59. Has your opinion of the criminal justice system changed due to the President Clinton impeachment trial?

Yes \_\_\_\_ No \_\_\_\_

a. Please explain: _____

60. What is your general opinion regarding lawyers? _____

61. Do you view differently, say, prosecutors from criminal defense lawyers?

 Yes ___ No ___

a. Please explain: _____

62. Have you followed any criminal trials over the past five years?

 Yes ___ No ___

a. If yes, please tell us which trials:

 _____

63. If you heard something in the courtroom that was different from something you read in the newspaper or heard on the news, would you believe what you heard in court or would you wonder why it was different from what you read or heard?

 _____

64. As a result of what you have seen, heard, read or discussed about this case, have you formed an opinion as to the innocence or guilt of the defendant?

 Yes ___ No ___

a. If yes, what opinion have you formed and in what is it based?

 _____

65. List the newspapers and magazines you read. Indicate how frequently you read them.

NAME REGULARLY OCCASIONALLY RARELY

66. Do you subscribe to The Scranton Times, The Scranton Tribune or The Sunday Times?

 Yes ___ No ___

a. If yes, please identify all papers that you subscribe to: _____

67. How often do you watch the news on television? _____

68. If you know or have ever heard or read about any of the following attorneys or federal agents involved in this case, place a check mark next to each person you know or have heard or read about.

 ___ Salvatore Cognetti, Esq.
 ___ Bruce D. Brandler, Esq.
 ___ Deryck Bratton
 ___ Daniel T. Brier, Esq.
 ___ David Barasch, Esq.
 ___ Donna A. Walsh, Esq.

69. In the event that you have heard or read anything about one or more of the attorneys in this case, would what you have heard or read in any way influence your verdict in this case?

 Yes ___ No ___

a. If yes, please explain: _____

70. As a result of what you have seen, read, heard or discussed about this case, have you formed an opinion about the way in which this case has been handled by the United States Government?

 Yes ___ No ___

a. If yes, what opinion have you formed and on what is it based?

 _____

71. Do you have any feelings about lawyers in general, prosecutors, or criminal defense attorneys that would prevent you from being fair and impartial?

 Yes ___ No ___

72. Do you understand that an indictment is nothing more than a document from the government *alleging* wrongdoing that is not evidence?

 Yes ___ No ___

73. Do you understand that the Government has the burden of proving their case beyond a reasonable doubt, and the defendant need not prove anything to be found *not guilty?*

 Yes ___ No ___

74. Do you understand that a person charged with a crime does not have to testify in his or her own defense?

 Yes ___ No ___

75. Do you believe that just because someone is charged with a crime, there must be something to it? In other words, "where there's smoke there's fire"?

 Yes ___ No ___

a. If yes, please explain: _____

76. In considering the testimony of a witness, would you take into account whether the witness had received any benefit (reduced sentence, dismissal of charges, immunity from prosecution) in exchange for testimony against the defendant?

 Yes ___ No ___

a. Please explain: _____

77. How do you feel about the practice in which a prosecutor gives benefits (reduced sentence, dismissal of charges, immunity from prosecution) to one person, in exchange for testimony against another person? ___

78. Do you believe that a person charged with a crime would say anything to save themselves?

 Yes ___ No ___

a. If yes, please explain: _____

79. Do you believe that the Government can and does make mistakes in charging people with crimes?

 Yes___ No___ Occasionally___

 Frequently___ Never___

80. Please state your personal belief regarding each statement:

a. "A defendant is innocent until proven guilty beyond a reasonable doubt."

 Strongly agree ___
 Agree ___
 Strongly disagree ___
 Disagree ___
 No opinion ___

b. "If the prosecution goes through the trouble of bringing someone to trial, the person is probably guilty."

 Strongly agree ___
 Agree ___
 Strongly disagree ___
 Disagree ___
 No opinion ___

c. "Regardless of what the law says, a defendant in a criminal trial should be required to prove his or her innocence."

 Strongly agree ___
 Agree ___
 Strongly disagree ___
 Disagree ___
 No opinion ___

81. Do you believe that a defendant in a criminal case should testify or produce some evidence to prove that he or she is not guilty?

 Yes ___ No ___

a. If yes, please explain: _____

82. Have you ever held any type of elected position for any type of group or organization?

 Yes ___ No ___

a. If yes, please list the group and position and describe the overall experience: _____

83. Have you ever contributed time, money or services to any political campaign or cause?

 Yes ___ No ___

a. If yes, please explain: _____

 In addition, please list all of the political campaigns to which you have contributed money and identify how much, on average, you contribute to political campaigns each year. _____

84. What political party or political organizations do you belong to? ___

85. What civic, social, religious, charitable, volunteer, professional or business organizations do you or your spouse belong to? _____

a. Do you or your spouse currently hold an office in any of these organizations?

 Yes ___ No ___

b. If yes, please indicate the office(s) held and the responsibilities of that office: _____

86. Do you or any family member or friend belong to any environmental or conservation organization?

Yes ____ No ____

a. If yes, please explain: _____

87. Have you or any family member been associated with or financially supportive of any of the following:

Ecologia ____
Throop Property Owners Association ____
Audobon Society ____
Green Peace ____
Sierra Club ____
Citizens Alert Regarding Environment (CARE) ____
Environmental Defense Fund ____
Lackawanna River Corridor Association ____
Keyser Valley Community Association ____
Earth Justice ____
The Nature Conservancy ____
Pocono Environmental Education Center ____
River Watch ____
River Heritage Association ____
Countyside Conservancy ____

88. What are your personal opinions, if any, concerning landfills or waste disposal sites? _____

89. In terms of your political beliefs, do you consider yourself to be:

Very conservative _____
Somewhat conservative _____
Moderate _____
Somewhat liberal _____
Very liberal _____

90. What are your leisure time interests and activities? _____

91. Are you currently reading a book?

Yes ____ No ____

a. If yes, what is the title of the book.

_____

92. What were the last three books you read? _____

93. What are your three favorite magazines? _____

94. How would you best describe yourself? (Circle one)

a. Loner
b. Leader
c. Follower
e. Other

95. Do you have any bumper stickers on your vehicle?

Yes ____ No ____

96. Have you or has any family member or close friend ever been part of a group that lobbies or takes public positions on issues?

Yes ____ No ____

a. If yes, please explain: _____

97. Does your employer operate a Political Action Committee (PAC)?

Yes ____ No ____

a. If yes, do you contribute to this PAC?

Regularly____ Sometimes____ Rarely____

98. Did you vote in any of the *national* elections of the past twenty years?

Yes ____ No ____

a. If yes, please list the election years in which you voted: _____

99. Did you vote in any *local* elections of the past twenty years?

Yes ____ No ____

a. If yes, please list the election years in which you voted and where: ____

100. Other than as a voter, are you politically active?

Yes ____ No ____

a. If yes, please explain: _____

101. Do you consider yourself to be a:

Democrat _____
Republican _____
Independent _____
Libertarian _____
Other party
member: _____ Specify: _____

102. Have you been active in the campaign of any candidate(s) for elective office in any Federal, Pennsylvania, or other state or local government?

Yes ____ No ____

a. If yes, please explain: _____

103. Have you or anyone close to you ever *run* for an elected office in any Federal, Pennsylvania, or other state or local government?

Yes ____ No ____

a. If yes, please explain: _____

104. Have you or anyone close to you *ever held* an elected or appointed office in any Federal, Pennsylvania or other state or local government?

Yes ___ No ___

a. If yes, please explain: _____

105. What are your general feelings about politicians? _____

106. Do you believe that politicians have good intentions when they do things?

Yes ___ No ___

a. Please explain: _____

107. Do you believe that politicians say things to the public that they think the public wants to hear?

Yes ___ No ___

a. Please explain: _____

108. Do you feel that just because people are in a position of power or the public spotlight, they should not be entitled to the same rights as private citizens?

Yes ___ No ___

a. Please explain: _____

109. Would you have any difficulty sitting as a juror in a case that dealt with a politician and allegations of perjury?

Yes ___ No ___

a. If yes, please explain: _____

110. How do you feel about elected officials being able to raise large sums of money as campaign contributions?

_____

111. How do you feel about persons who contribute sums of money as campaign contributors? _____

112. What are your personal opinions, if any, regarding the honesty and integrity of elected lawmakers, including members of the federal and state senate and house of representatives?

_____

113. Have your opinions concerning the honesty and integrity of elected officials changed since the impeachment of President Clinton?

Yes ___ No ___

a. If yes, please explain: _____

114. Have you or any member of your family ever contributed to any fund for the benefit of State Representative Frank Serafini or his family over the past twenty (20) years?

Yes ___ No ___

a. If yes, please explain: _____

115. Have you, or any member of your family attended any fund raisers, rallies, receptions, or other functions in support of or in honor of State Representative Frank Serafini in the past twenty (20) years?

Yes ___ No ___

a. If yes, please explain: _____

116. Have you or any member of your family or close friends ever worked for or had a business association with any of the following? (Check all that apply.)

Empire Sanitary Landfill ___
USA Waste Services ___
Alliance Landfill ___
Keystone Sanitary Landfill ___

a. If you checked any of the above, please explain: _____

117. Can you think of any situation where a politician should be denied a right or privilege held by the public-at-large? _____

a. Please list and explain: _____

118. Can you think of any situation where persons who are wealthy should be denied a right or privilege held by the public-at-large or should be held to standards different than those applicable to the public at large?

Yes ___ No ___

a. Please list and explain: _____

119. Do you believe that people who have money tend to "get away with things"?

Yes ___ No ___

a. If yes, please explain: _____

120. What are your opinions, if any, concerning persons who inherit or are given wealth? _____

121. Some people have very strong feelings on the issue of politicians. If you have such feelings, would it be difficult for you to return a verdict of *"Not Guilty"* for the accused, if the government did not prove its case beyond a reasonable doubt?

Yes ___ No ___

a. If yes, please explain: _____

122. Do you or does any relative or friend know or have any connection (personal, business, or social) with any of the individuals on the attached list?

Yes ___ No ___

a. If yes, please list their names and explain how you or your relative or friend knows the individual(s). ___

123. Other than the possible length of the trial, do you have any other concerns or reservations about sitting as a juror in this case?

Yes ___ No ___

a. If yes, what are those concerns or reservations? _____

124. Is there anything in your life either at home or at work that might cause you to be distracted if you were selected to sit as a juror on this case?

Yes ___ No ___

a. Please explain: _____

125. Is there anything you can think of that you should bring to the court's attention regarding your service as a juror on this case?

Yes ___ No ___

a. If yes, please explain: _____

126. Have you consulted with anyone in order to complete this questionnaire?

Yes ___ No ___

a. If yes, with whom did you consult and why? _____

127. As a result of filling out this questionnaire, have you formed any fixed opinions about this case?

Yes ___ No ___

a. If yes, what are those opinions? _____

128. The impeachment trial of President Clinton has received a great deal of publicity throughout the United States. Is there anything about that case which might affect your ability to render an impartial verdict based solely on the evidence and the Court's instructions on the law?

Yes ___ No ___

a. Please explain: _____

129. Do you have any impression, opinion or belief concerning the police, the Department of Justice, the United States Attorney's Office or law enforcement agencies generally, or concerning any other matter that would lead you to favor or oppose the government in this case?

Yes ___ No ___

a. Please explain: _____

130. Do you have any impression, opinion or belief concerning the defendant that would lead you to favor or oppose the defendant in this case?

Yes ___ No ___

a. Please explain: _____

131. If you were representing the *prosecution* in this case, is there any reason why you would not want to have the case decided by someone with your beliefs, background or frame of mind?

Yes ___ No ___

a. Please explain: _____

132. If you were representing the *defendant* in this case, is there any reason why you would not want to have the case decided by someone with your

beliefs, background or frame of mind?

Yes ___ No ___

a. Please explain: _____

133. If there any other matter which you should call to the Court's attention, which may have any bearing on your qualifications as a juror or which may affect your ability to render an impartial verdict based solely on the evidence and the Court's instructions on the law?

Yes ___ No ___

a. Please explain: _____

134. Based upon what you have heard about this case, do you have any impression, opinion or belief that would lead you to believe the defendant is guilty or innocent?

Yes ___ No ___

135. Under the law, facts are for the jury to determine and the law is for the judge to determine. You are required to accept the law as the judge explains it to you even if you do not like the law or disagree with it, and you must determine the facts according to those instructions. Would you have any difficulty following this rule?

Yes ___ No ___

a. Please explain: _____

136. Under the law, a defendant need not testify. If a defendant does not testify, the jury may not consider that fact in reaching a decision as to guilt or innocence. Would you have any difficulty in following this rule?

Yes ___ No ___

a. Please explain: _____

137. Under the law, a person cannot be convicted of perjury unless the government proves beyond a reasonable doubt that the question as the defendant understood it was falsely answered. Would you have any difficulty following this rule?

Yes ___ No ___

a. Please explain: _____

138. The indictment itself is not evidence against a defendant. It is simply the written document by which the government notifies the defendant of the charges against him. You may not infer any wrongdoing on the part of a person merely because he has been indicted. Would you have any difficulty following this rule?

Yes ___ No ___

a. Please explain: _____

139. Every defendant is presumed innocent and cannot be convicted unless the jury, unanimously and based solely on all the evidence in this case, decides that his guilt has been proven beyond a reasonable doubt. Would you have any difficulty following this rule?

Yes ___ No ___

a. Please explain: _____

140. Do you have any questions, and if so, what questions do you have?

I declare under penalty of perjury that the answers I have given are true and correct to the best of my knowledge and belief.

JUROR'S NUMBER:

SIGNATURE: _____