KERN, Justice
(concurring in part and dissenting in part).
[¶31.] I concur'in the majority opinion’s analysis of Issues 1 and 2. As to Issue 3,1 agree with the majority opinion’s conclusion that the prosecutorial misconduct involved was “exceedingly inappropriate” and constituted plain error. However, I respectfully disagree that this does not reach the threshold of a federal constitutional violation warranting reversal. In my view, the State’s conduct was so improper that it seriously affected the fairness' and integrity of the judicial proceedings, depriving Janis of his substantial right to a fair and impartial jury. I would reverse and remand for á new trial.
[¶32.] When analyzing a claim under the plain error standard of review it is necessary to. carefully review the claim against the entire record. United States v. Young, 47.0 U.S. 1, 16, 105 S.Ct. 1038, 1046, 84 L.Ed.24 1 (1985). Such a review establishes that beginning with voir dire, the State attempted to improperly influence the poteptial jurors and interject their mental attitudes into the case, The most egregious conduct involved the State’s focus on the character of the accused and his unfaithfulness to his wedding vows. “In deciding whether questions exceed the proper scope of voir dire, courts can look to whether they: (1) seek to uncover biases, prejudgments, or prejudices; (2) attempt to ascertain impartiality and qualifications; or (3) undertake to entrap, influence, or obtain a pledge on is *85 sues expected to arise in trial.” State v. Scott, 2013 S.D. 81, ¶ 13, 829 N.W.2d 458, 464.
[¶ 33.] During voir dire, the State began a discussion regarding the nature of the offense with this statement: “And, um, the facts of this case, the groom raped the bride of honor — the maid of honor. That is the fact that we have beat around the bush, and I’m not beating around the bush anymore. On the wedding night.” But this inflammatory statement by the State was the question to be decided by the jury. A defendant has a right to be tried solely on the basis of the evidence presented to the jury. The risk with this type of remark is that “the prosecutor’s opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government’s judgment rather than its own view of the evidence.” Young, 470 U.S. at 18-19, 105 S.Ct. at 1048. This tone and tactic pervaded every aspect of the trial.
[¶34.] Next, the State proceeded to elicit from potential jurors the lengths of their marriages receiving answers of 20, 26, 29, 40, 42, and 58 years. The State then inquired about the individual juror’s feelings regarding their marriage vows. The State asked a prospective juror who performed marriages; “[f]rom the day you took the vow to every time that you’ve given the vow, what do they mean to you?” The juror answered that, he took the vows very seriously and it involved a matter of personal integrity to him. The colloquy continued:
Prosecutor: Okay. What if you don’t mean the words?
A Juror: Well, then you’re lying. Prosecutor: Okay.
A Juror: Right? If you don’t, mean what you say.
Prosecutor: Okay.
A Juror: When I do premarital counseling, um, I always emphasize .that these are promises you are making to each other, and a promise is only as good as your character.
The State asked other jurors questions such as: “What do your vows mean- to you? ... Any amount of alcohol make you sacrifice them?”; “Is there anything more important than that vow that you took with that man, your husband?”; and “Can you think of anything in your life more important than that day and those vows you took?”[2] This type of inquiry far exceeded *86 the proper purpose and scope of voir dire — namely, to determine whether the prospective jurors could “set aside preconceptions and render an impartial verdict.” State v. Muetze, 368 N.W.2d 575, 585 (S.D.1985). Counsel should be permitted to inquire whether prospective jurors have preconceived attitudes or biases that would prevent them from following the law or applying a legal theory or defense. State v. Iromuanya, 282 Neb. 798, 806 N.W.2d 404, 425 (2011). But, the State’s questions were designed to improperly influence the jurors’ opinions on issues raised during trial, including Janis’s credibility. See id. (stating “parties may not use voir dire to impanel a jury with a predetermined disposition or to indoctrinate jurors to react favorably to a party’s position when presented with particular evidence”); State v. Hayes, 2014 S.D. 72, ¶ 35, 855 N.W.2d 668, 679; State v. Janklow, 2005 S.D. 25, ¶ 47, 693 N.W.2d 685, 700-01 (noting it is improper for a prosecutor to inject “unfounded or prejudicial innuendo” into trial or to appeal to jury’s prejudices); Scott, 2013 S.D. 31, ¶ 13, 829 N.W.2d at 464.
[¶ 35.] The improper references to Janis’s character only began with voir dire. Throughout opening statements, questioning, and both closing arguments, the State continued to inject Janis’s character into the trial tying it to Janis’s infidelity to his wedding vows. The State’s comments were not limited to those provided in the majority opinion. In its opening statement, the State directed the jurors, “Now, when you look at this case and you evaluate it, look at the credibility and the trust and the vows.” Again, when cross-examining Janis, the State directed the focus to Janis’s marriage vows asking, “Those marital vows that you took at Chautauqua Park are only as strong as the character of the person taking those vows. Do you agree with that?” The State also asked Janis, “Okay, So let’s talk about your character. Because we talked about your character and what you thought of [your wife] the day after your wedding, but let’s walk through the night after the reception.”
[¶ 36.] The State wrapped up its first closing argument by referring to the vows, stating that while the parties agreed J.E. said stop, “Cleve didn’t stop. You know what Cleve did? Cleve finished. He finished. And I think that that fact, that fact shows the true character of the man that took the vows that day. That’s his character.” As noted in the majority opinion, there were further references to Janis’s character in the rebuttal closing argument when the State said, “And I think if you focus on the quarter, you focus on the facts, you focus on character, you will convict Cleve Janis.”
[¶37.] Closing arguments “should be no more than an accurate summary of the state of the evidence.” State v. Smith, 1999 S.D. 83, ¶ 48, 599 N.W.2d 344, 354. Attorneys are permitted to “discuss the evidence, pointing out discrepancies and conflicts in the testimony, and argue that the evidence in the record supports and justifies a conviction ... he or she may make remarks, not based on the record, which concern matters of general knowledge or experience.” Id. ¶ 46, 599 N.W.2d *87 at 354. The attorney crosses the line, however, upon injecting “unfounded or prejudicial innuendo into the proceedings ... or appealing] to the prejudices of the jury.” Id. (quoting State v. Blaine, 427 N.W.2d 113, 115 (S.D.1988)). Unfair statements “invite a jury decision by emotion rather than by evidence.” Id. ¶48, 599 N.W.2d at 354 (finding “[t]he prosecutor’s penchant for making statements meant to inflame the passion of the jury and go outside the realm of admissible evidence, is an example of the unprofessional, ‘win-at-all costs’ attitude that scars the judicial system”). The State’s evidence in this case was strong but not overwhelming, rendering the repeated references to Janis’s character even more problematic. This case boiled down to the question whether J.E. was capable of consenting and, if so, did she consent to the sexual act. If J.E. was too intoxicated to consent, the relevant question was whether Janis knew or reasonably should have known J.E. was too incapacitated to consent. Janis testified that J.E. used her hand to guide his penis, pushed back against him, and moaned quietly. He testified that when she said, “No” he stopped the contact. J.E.’s statements were that she was “frozen” by fear, tried to push his hand away, and did not consent. The theme of the defense was that both were drunk and made poor decisions. The defense claimed that because J.E. was embarrassed by what had occurred she reported the act as a rape.
[¶ 38.] To resolve these issues, the jury was required to evaluate the testimony of Janis and J.E. The only purpose of repeatedly emphasizing Janis’s failure to abide by his wedding vows was to show that he was a man of bad character. A man, whose testimony included that J.E. was able to give consent and did consent to the sexual act, should not be believed. This is an impermissible use of character evidence, which is only admissible under carefully prescribed rules. See SDCL 19-19-404; SDCL 19-19-607 to 609.[3] It is well established that plain-error analysis should be applied cautiously and only in exceptional circumstances. State v. Beck, 2010 S.D. 52, ¶ 10, 785 N.W.2d 288, 292-93. This is such a case. Prosecutorial misconduct reaches the level of a federal constitutional violation only if the argument “so infect[s] the trial with unfairness as to make the resulting convictions a denial of due process.” Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). While even defense counsel admitted that Janis’s conduct was morally reprehensible, Janis is nevertheless entitled to a fair trial. The State’s uninterrupted strategy to interject Janis’s character into the case from beginning to end so tainted the integrity of the judicial proceedings as to violate Janis’s basic right to due process and a fair trial. There is a reasonable probability that but for the *88 statements made by the prosecution, the jury may have acquitted. The conviction should be reversed.

. Counsel for Janis also asked a question of prospective jurors in an improper form. Defense counsel asked:
Is there anyone here who is a victim of rape—
(No response.)
—who would rather not talk about it in the presence of everyone else?
(No response.)
Seeing no hands, I’ll broaden the circle a little bit. Is there anyone here who has a close family member, a sister, a brother, a child, niece or nephew who was a victim of rape?
(A couple of hands are raised.)
The circuit court then properly gave jtirors the opportunity to discuss their answers in chambers in the presence of the parties. While defense counsel inferred the setting could be changed, he posed the initial question in such a way as to require jurors to publicly disclose whether or not they had been the victim of rape. There are several problems with the form of defense counsel's question. First, jurors who have been victimized may be unwilling to disclose this information in a public setting. If a juror has a. bias, which is ’ not disclosed, a defendant could be deprived of a fair and impartial jury. Further, requiring a juror to answer this type of question in a public setting may unnecessarily subject the juror to embarrassment or humiliation. Jurors are required to disclose their biases if asked. But such questions should be broadly worded to increase the likelihood that jurors provide honest answers to such personal questions and decrease potential embarrassment/ Then it is proper, as *86 the circuit court did here, to give jurors the opportunity for individual voir dire outside the presence of the larger group during which counsel may inquire and obtain a more detailed answer. See Brandborg v. Lucas, 891 F.Supp. 352, 357 (E.D.Tex.1995) (stating "nothing about becoming a prospective juror amounts to a willing waiver of an expectation of privacy” as jurors are summoned to the public forum and do not seek it out themselves). See also United States v. Serafini, 57 F.Supp.2d 108, 112 (M.D.Pa.1999) (noting that jurors’ privacy rights are not absolute, but a balance must be achieved).

. SDCL 19 — 19—404(a)(1) and -404(b)(1) provide the general rules to which there are enumerated exceptions. SDCL 19 — 19— 404(a)(1) provides that “[e]vidence of a person’s character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.”
SCDL 19 — 19—404(b)(1) provides that "Evidence of a crime, wrong, or other act is not admissible to prove a person’s character in order to show that on a particular occasion the person acted in accordance with the character.”
SDCL 19-19-608(a) with reference to reputation or opinion evidence provides:
A witness's credibility may be attacked or supported by testimony about the witness’s reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness’s character for truthfulness has been attacked.